UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| J.G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 6:16-cv-03347-REL |
| | ) |
| JAMES ARNOTT, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S ATTORNEY FEE APPLICATION

COME NOW Defendants, by and through their counsel of record, Keck & Austin, LLC, and for their Suggestions in Opposition to Plaintiff's Attorney Fee Application assert the following:

### Nuisance Cases Are Not Entitled to Attorney Fees

In order to determine whether an award of attorney fees is appropriate, Courts "concentrate on the objective meritoriousness of a plaintiff's claim, and refuse to award fees if the claim is frivolous or groundless." *Tyler v. Corner Const. Corp., Inc.*, 167 F.3d 1202, 1206 (8th Cir.1999). "Suits that are frivolous or groundless are true nuisances; indeed, they are sometimes thinly disguised forms of extortion, the kinds of activities that courts ought, for obvious reasons, not to encourage." *Id*. "[Although a] prevailing party is ordinarily entitled to attorney's fees of some sort, it is nevertheless true that there are 'special circumstances' that can "render such an award unjust." *Id*. (*quoting Newman v.*

1

*Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)(per curiam )). Nuisance settlements are such a "special circumstance." *Tyler*, 167 F.3d at 1206. Accordingly, the Court must consider the objective merit of Plaintiff's claims.

By way of background, Plaintiff asserted she was born male, had gender reassignment surgery, and was a "transsexual" at the time of her arrest. (Ex. 1, Petition, para. 20-24). Plaintiff admitted she was arrested and booked into the Greene County Jail as a female inmate, and underwent a standard strip search during booking. (Ex. 1, Petition, para. 8-12). Plaintiff admitted that, after the search, the arresting officer contacted jail staff and asked why a male was being housed with female inmates. (Ex. 1, Petition, para. 29-30). All of Plaintiff's subsequent allegations basically regard three matters. First, Plaintiff complained that after the arresting officer's call, Cpl. Madison (a female corrections officer) improperly conducted a strip search of Plaintiff in the presence of Sgt. Dodson (a male corrections officer). (Ex. 1, Petition, para. 48, 53). Second, Plaintiff argued that Greene County Jail policies prohibited searching Plaintiff to confirm her gender (Ex. 1, Petition, para. 46, 54-58). Third, Plaintiff complained that after that search, she was placed in "administrative segregation/protective custody" and kept away from the other inmates. *See* (Ex. 1, Petition, para. 65). None of those matters justified Plaintiff filing this lawsuit.

## **Plaintiff Falsely Accused Sergeant Dodson**

Plaintiff repeatedly accused Sgt. Dodson of watching her during a strip search and

lying about it. Prior to filing suit, Plaintiff's counsel sent a letter dated May 2, 2016 that alleged Plaintiff had to "go into a shower room where Corporal Madison had her undress in front of her and Sergeant Dodson." (Ex. 2, p. 2). In her pleading, Plaintiff went so far as to accuse Sgt. Dodson of falsifying a report, and asserted "[i]n his report, Dodson claims he did not watch… [h]owever, Dodson did watch." (Ex. 1, Petition, para. 48, 50, 53). In an email, Plaintiff's counsel cited multiple court opinions for the proposition that cross-gender strip searches are often unlawful; again suggesting that Sgt. Dodson had watched Plaintiff. (Ex. 3).

However, Plaintiff's allegations were false. Jail surveillance video clearly shows that Cpl. Madison and Sgt. Dodson (the man next to Cpl. Madison) were in a property room adjacent to the room where Plaintiff undressed, and that only Cpl. Madison was in line of sight to view Plaintiff. (Ex. 4). Cpl. Madison gave Plaintiff verbal commands during the search, and the entire process lasted mere seconds. (Ex. 4). Defense counsel provided that video prior to and then through initial Rule 26 disclosures on September 28, 2016. (Doc. 8). Plaintiff clearly did not dismiss; but this does explain in part why Plaintiff eventually fought to obtain the judgment for damages of $501.00.

## There Is No Legal Basis To Support Any Claim

Plaintiff did not assert any specific right violation in her pleading, and instead merely alleged a violation of "rights secured to [Plaintiff] by the United States Constitution." (Ex. 1, Petition, para. 66). However, in communications between counsel, Plaintiff's counsel cited caselaw regarding cross-gender searches (when none occurred),

and suggested that:

> I'm sure you're familiar with the Prison Rape Elimination Act and it's obligation upon the Greene County Jail. The PREA standards state that cross gender strip searches should not happen unless there is an emergency. 28 C.F.R. §115.15(a). Most importantly, staff cannot search or physically examine transgender prisoners solely to determine their genital status. 28 C.F.R. §115.15(a). THAT IS PRECISELY WHAT HAPPENED HERE AND THE JAILERS REPORT CONFIRMS IT.
>
> Simply put, Sheriff Arnott must train staff to perform more respectful searches of transgender prisoners (28 C.F.R. §115.15(f)) and he did not.

(Ex. 3). There are of course several problems with Plaintiff's argument. First, as detailed above, the surveillance video shows there was no cross-gender search. Plaintiff identifies as female, and was searched by a female. Second, there is absolutely no legal authority to support the contention that PREA, or the above-cited federal regulations, impose any duty on county jails. As they relate to state and county correctional facilities, PREA and similar federal regulations are merely aspirational policy goals that can be adopted in pursuit of federal grants. *See* (Ex. 5). In fact, that may explain why Plaintiff repeatedly cited Greene County Jail policies in her pleading, since those policies happen to incorporate language from PREA. *See* (Ex.1, Petition, para.46). Regardless, even if it were assumed that jail staff violated a jail policy, this could not form the basis of a claim, because inmates are not entitled to any particular jail policy, and officials are given "wide-ranging deference" in the execution of policies. *Spencer v. Farrier,* 807 F.2d753,755 (8th Cir. 1986). Similarly, and in reference to Plaintiff's complaint about being placed in protective custody, inmates do not have any liberty interest in being

placed in general population, as opposed to protective custody. *Hewitt v. Helms,* 459 US 460,468,470-71 (1983). At best, Plaintiff's allegations regarding the search and protective custody, are weak attempts to assert an equal protection claim. If contested, Plaintiff would have to demonstrate she was treated differently than a similarly situated class of inmates, that the different treatment burdened one of her fundamental rights, and bore no rational relation to any legitimate penological interest. *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir.1999). Plaintiff would also have to show that any discrimination was intentional. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir.2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir.2003). Plaintiff could never meet that burden, and thus Plaintiff's assertion that "Sheriff Arnott must train staff to perform more respectful searches of transgender prisoners," is particularly galling, because there is no evidence of ill-intent, and because the video clearly shows the polite, professional approach that staff took towards Plaintiff, and that they were clearly motivated by safety concerns. (Ex. 4).

In sum, if this case proceeded, Defendants would be entitled to summary judgment because Plaintiff filed a frivolous case that failed to state any claim for which relief could be granted.

### Reasonableness of Attorney Fees

If the Court finds the case was frivolous or groundless, then no attorney's fees should be awarded. *Tyler*, 167 F.3d at 1206. Alternatively, if the Court reaches the opposite conclusion, the starting point is to calculate the "lodestar" amount (the number of hours reasonably expended by reasonable hourly rates), after which the Court may

adjust that amount using a series of factors, where "[t]he most critical factor in assessing fees is the degree of success obtained." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 853 (8th Cir.2002)(*citing Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

There are several ways of articulating relevant factors for determining reasonableness, including "the [party's] overall success; the necessity and usefulness of the [party's] activity in the particular matter for which fees are requested; and the efficiency with which the [party's] attorneys conducted that activity." *Jenkins ex. rel. Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir.1997). These factors have also been described, not in order of importance, as including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*United Health Care Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 575 n. 9 (8th Cir.1996)(*citing Hensley*, 461 U.S. at 434 n. 3).

### **Amount Involved and Results Obtained**

Again, "[t]he most critical factor in assessing fees is the degree of success obtained." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir.2002). As the Court knows, the offer of judgment allowed for damages of $501.00 to awarded to Plaintiff.

6

(Doc. 11-1). Here, the Court may observe that amount is (in addition to being consistent with a "nuisance settlement") indicative of the degree of success obtained. In any event, the relatively small amount of damages awarded to Plaintiff should be considered. *See Loggins v. Delo*, 999 F.2d 364, 369–70 (8th Cir.1993).

The Court may also consider past settlement offers as a factor in determining an award of reasonable attorney's fees. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012 (8th Cir.2004). In a letter dated May 13, 2016, defense counsel advised Plaintiff's counsel that there did not appear to be any valid claim (Ex. 6), but on the same date, and in the interest of economy, simultaneously conveyed a nuisance offer of judgment for nearly double the current amount, for a total of $1,001.00, plus another $1,001.00 for attorney fees and costs of. (Ex. 7). In a letter dated May 27, 2016, Plaintiff expressly rejected that higher settlement offer. (Ex. 8).

It is further worth noting the lack of proportionality in Plaintiff's attorney's request for nine thousand four hundred eighty-four dollars and forty cents ($9,484.40), which is nearly nineteen (19) times higher than the judgment itself. *Loggins v. Delo*, 999 F.2d 364, 369-370 (8th Cir. 1993)(internal citations omitted)(noting that proportionality is not mandatory, but that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded"). Courts properly consider the amount of damages recovered when determining whether to reduce attorney fees in civil rights cases. *Id. see also Foley v. City of Lowell, Mass.*, 948 F.2d 10, 19 (1st Cir. 1991)("While the amount of damages recovered in a civil rights suit does not constitute a dispositive

criterion, or even a ceiling on an ensuing fee award, it is nonetheless relevant to the calculation of a reasonable fee.")(*citing City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality op.); *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

**Contingency Fee**

The existence of a contingency fee agreement is also relevant, and although it does not bind the Court, it is still considered by courts as one of the many factors used to determine reasonable attorney fees. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)(*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (1974)); *see also Bywaters v. U.S.*, 670 F.3d 1221, 1231-32 (2012)(fee agreements are considered in determining lodestar). Here, the Court should note that prior to filing suit, Plaintiff's counsel sent a letter dated May 2, 2016 that asserted they represented Plaintiff pursuant to a "39% contingency fee agreement." (Ex. 2, p.1).

**Novelty and Requisite Skill**

Plaintiff has suggested that the complexity of jail booking procedures, and "the developing body of law pertaining to LGBTQ/transgender law," made this case "challenging." (Doc. 31, p. 7). Similarly, Plaintiff submitted in part that "[i]f counsel had not had a broad range of experience in litigating with the Greene County Sheriff, Plaintiff may not have been adequately represented." However, as detailed above, the heart of Plaintiff's case was based on a false premise, and surveillance video disproved the cross gender search allegation. Further, contrary to Plaintiff's arguments, this case

8

had little to do with "the challenging" nature of "the developing body of law pertaining to LGBTQ/transgender law," and none of the PREA, federal regulations, or court opinions that Plaintiff emphasized had any bearing. Finally, Plaintiff's argument regarding complexity should be contrasted with her accusation against the Defendants that "[a] reasonable person should have known they were violating Plaintiff's clearly established rights…" (Petition, para. 69).

## Amount of Time and Labor

Factors such as the amount of time, labor, preclusion of other work, and time pressure, are also relevant to determining reasonable attorney fees; but this case simply did not involve much effort by Plaintiff, and the Court may take judicial notice that there are no certificates of service regarding discovery, and no notices of depositions, because the parties conducted absolutely no discovery.

## Attorney Fees Cannot Be Based on Unbilled Time

Plaintiff argued in part that her billing numbers were reasonable because "applicant has not billed the $4,000 in time incurred in trying to force Defendant to honor his offer of judgment nor any time associated with this fee application." (Doc. 31, p. 6). However, the idea that unbilled (and undocumented) time could be used to support an award of attorney fees is inconsistent with Plaintiff's burden of proof. *Fish.* 295 F.3d at 852. Further, "hours that are not properly billed to one's client also are not billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434. Here, "the applicant" appears to be Plaintiff's counsel, not Plaintiff herself. (Doc. 31, p. 6). Neither

9

the dispute over the offer of judgment nor that over attorney fees, are of any benefit to Plaintiff in contrast with the previously rejected higher offer of damages. In sum, it seems fairly unlikely that Plaintiff could be billed for such hours, and thus they cannot be fee-shifted onto Defendants. *Hensley*, 461 U.S. at 434.

### Vague Billing Entries

Plaintiff has failed to meet her burden of proof regarding the reasonableness of any attorney fees, because she has provided incredibly vague billing entries. (Doc. 31-2, p. 2). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To meet that burden, the applicant must submit adequate evidence to demonstrate the hours worked and rates claimed. *Id*. at 433. The Court must exclude claimed hours not "reasonably expended[,]" including those that are "excessive, redundant, or otherwise unnecessary...." *Id*. at 434. Vague billing records preclude meaningful review of fee applications, and can warrant reducing an attorney fee. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991); *see also Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Plaintiff's counsel should at least "identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. *See White v. Kelsey*, 935 F.2d 968, 970 (8th Cir.1991)(stating that applicant has burden of documenting that time was not spent on unrecoverable activities); *see also Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 675 (8th Cir.1995)(reducing fee because of inadequate documentation). Plaintiff has

submitted that multiple attorneys and clerical staff together generated 31.4 hours of work. (Doc. 31-2, p. 2). Plaintiff listed the attorney hourly rates as $406.00 per hour,[1] and support staff at $134.00 per hour. (Doc. 31-2, p. 2). Combined, Plaintiff submitted she was entitled to $9,484.40. (Doc. 31-2, p. 2). However, there is no description of any of the work performed, and so there is simply no way for the Court to award attorney fees, because it is not at all clear what work was done. (Doc. 31-2, p. 2).

The Court should also note that Plaintiff's attorney fee calculations are inconsistent with previous assertions of Plaintiff, and it appears Plaintiff's counsel has submitted higher hourly rates. In contrast, on January 18, 2017, Plaintiff's counsel represented that firm's fees as $250.00 per hour. (Ex. 9). Obviously, this is a substantially lower rate than Plaintiff has now suggested. (Doc. 31-2).

### **Multiple Attorneys**

Plaintiff submitted billing for multiple attorneys without sufficient descriptions of why their work was reasonably necessary. (Doc. 31-2, p. 2). Certainly, there are cases where it is reasonable for more than one attorney to be involved. *See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc*., 130 F.3d 349, 359 (8th Cir.1997). However, "[a] court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. ex rel. L.B. v. Kierst*, 56

---

[1] For reasons that are not apparent, Plaintiff also listed a recently admitted attorney's rate as $258.00 per hour, but listed the number of hours that attorney worked as zero.

11

F.3d 849, 864 (8th Cir.1995). Here, Plaintiff's billing entries do not provide any method for the Court to determine whether those attorneys were engaged in non-duplicative work; or even what work they supposedly did. (Doc. 31-2, p. 2).

### **Professional Support Staff Billing**

Plaintiff submitted billing for twelve (12) hours of work performed by "Professional Support Staff," and billed at a rate of one hundred thirty-four dollars ($134.00) per hour. (Doc. 31-2, p. 2). However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989). Without any description whatsoever of the work performed, it should be presumed that this regards clerical work, and the salaries of clerks and secretaries are part of a firm's overhead, and cannot be shifted onto the Defendants. *See Sellers v. Peters*, 624 F. Supp. 2d 1064, 1069 (E.D. Mo. 2008); *Knudsen v. Barnhart*, 360 F. Supp. 2d 963, 977 (N.D. Iowa 2004); *see also Al-Birekdar v. Chrysler Grp., LLC*, 499 Fed.Appx. 641, 648 (8th Cir. 2013)(affirming without analysis "line item" cuts for administrative and ministerial tasks). In any event, Plaintiff did not provide any description of the work supposedly performed; let alone explain how this was anything more than clerical work. (Doc. 31-2, p. 2).

### **Conclusion**

This case was no more than a raid, and based on a patently false allegation of a cross gender strip search. None of the Defendants acted unlawfully, and all would be entitled to summary judgment. Accordingly, no attorney fees should be awarded.

Alternatively, Plaintiff has failed to meet her burden of showing she is entitled to any attorney fees, because she has not provided any description of the work performed.

Otherwise, the "reasonable" amount of attorney fees must be determined in light of the most important factor: the degree of success. Here, Plaintiff purportedly obtained judgment for damages of $501.00, after previously rejecting an offer for nearly twice that amount. If Plaintiff had accepted the original offer, Plaintiff and her counsel each would have obtained $1,001.00.

Finally, Plaintiff's past representations of a lower attorney fee rate, as well as the contingency fee agreement, should be considered. The previous hourly rate was nearly half that submitted to the court, and if Plaintiff's vague billing hours were sufficient to award attorney fees (and they are not) the amount would total $4,850.00. If Plaintiff's fee agreement was adhered to, then the attorney fees would be $195.39.

Respectfully submitted,

KECK & AUSTIN, L.L.C.

By /s/ *Damon S. Phillips*
Damon S. Phillips #52901
3140 E. Division
Springfield, MO 65802
Phone: (417) 890-8989
Fax: (417) 890-8990
Email: damon@keckaustin.com
Attorneys for Defendant